OPINION *Page 2 
{¶ 1} Appellant, Willie E. Jones, IV, was indicted by the Stark County Grand Jury and charged with one count of murder, in violation of R.C. § 2903.02(A) for the shooting death of Jackie Stallings, Jr. The grand jury included a firearm specification in the indictment. A jury found appellant guilty of the murder and the firearm specification as charged in the indictment. The trial court sentenced Mr. Jones to a prison term of fifteen years to life, with an additional mandatory three-year term for the firearm specification.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 27, 2006, Theressa McCord was hosting an informal party in the unattached single-car garage at her residence. One of the invited guests was Jacky Stallings, Jr. Also in attendance were Victoria Umbles and another woman named Shanelle.
 {¶ 3} During the early part of the evening, Stallings and Umbles left the party to get some more beer from a store located two blocks away. The pair left in Stallings' green Bonneville.
 {¶ 4} The appellant was walking to the Lemonhead Market, also known as Meze Market with Amanda Murphy and Anthony Perez. Jackie Stallings pulled up to them in a green vehicle. He attempted to converse with Ms. Murphy; however, she was not receptive to his advances. When he persisted, Ms. Murphy informed him, "ain't nothing happening, keep moving." Ms. Murphy observed a passenger in the vehicle later identified as Victoria Umbles. *Page 3 
 {¶ 5} Ms. Murphy, Mr. Perez and the appellant arrived at the store; however the door was locked. While they waited for an employee to open the door, Stallings pulled his vehicle between the street and the steps of the store and pointed a gun at all three. With gun in hand, Stallings demanded to know personal information about Ms. Murphy, specifically her name and age. The appellant instructed Ms. Murphy to give Stallings the information. Ms. Murphy then entered the store while the appellant and Mr. Perez waited outside. When Ms. Murphy walked out of the store, Stallings and Umbles entered it. Ms. Murphy, Mr. Perez and the appellant then left the market and walked to Ali Olmeda's residence.
 {¶ 6} A short time later, the appellant returned to Lemonhead Market to purchase more beer. He walked back to Mr. Olmeda's residence by way of an alley. The appellant testified that he observed some people in a garage along the alleyway. One of the individuals, Mr. Stallings, made a statement to him. When he entered the garage to hear what Stallings was saying, Stallings approached him. Feeling threatened, appellant pulled his gun, cocked it, and pointed it at Stallings, telling him to stop. Stallings initially stopped, but then rushed appellant. A struggle over control of the firearm ensued. When it appeared to the appellant that Stallings would gain control over the gun, the appellant pushed him. Both fell to the ground. Stallings reached behind himself. The appellant testified that he believed that Stallings was reaching for his firearm. The appellant began firing his weapon as he was getting up from the ground. The appellant testified that if he had not fired his weapon and attempted to run away Stallings would have shot him. The appellant threw his firearm in the dumpster behind Goodtimes bar. The next morning he took a bus to Virginia. *Page 4 
 {¶ 7} Theressa McCord testified that she was in the garage when the appellant entered. While talking on the phone, she looked back into the garage and noticed a scuffle over a firearm taking place. She observed only one gun and that the appellant had possession of it. Ms. McCord testified that Stallings did not have a firearm. She did not know the appellant, but did pick him out of a photo identification lineup. She did not know who started the altercation or who pulled out the firearm. Ms. McCord testified that Victoria Umbles was Stallings' girlfriend. Ms. McCord did not know if Ms. Umbles or the other woman present in the garage at the time had hidden a gun.
 {¶ 8} Ms. Umbles testified that after leaving the market she and Mr. Stallings returned to the garage. She went inside the residence to use the restroom. She then heard shots fired. When she returned to the garage, she observed Stallings lying in the alley adjacent to the garage. She also observed Stalling's firearm on the ground beside him. She kicked the gun out of the way in the direction of the garage. Ms. Umbles testified that she did not inform the police of the incident at Lemonhead Market or that Stallings had a firearm lying next to him. Ms. Umbles was "highly intoxicated." Ms. Umbles did not know the appellant.
 {¶ 9} Sidney Pride testified that the appellant told him that Stallings invited the appellant to meet him on 16th
Street. Mr. Pride also testified that the appellant stated that he was "trying to rob the dude and the dude grabbed the gun." The appellant told him that he shot Stallings. Mr. Pride did not tell police that the appellant stated he was attempting to rob Stallings. Mr. Pride further admitted that he had not informed the police that he had taken appellant to the bus station the next morning. *Page 5 
 {¶ 10} Stallings was shot five times — in the right chin, the left wrist, a grazing gunshot wound to the scalp that caused non-fatal brain hemorrhaging, in the right mid-back, and in the mid-abdomen area. These last two gunshot wounds caused extensive damage to Stallings internal organs, which produced massive bleeding. Stallings eventually died from this massive blood loss. A criminalist with the Stark County Crime Lab, after examining Stallings' shirt and the gunpowder residue on it from two bullet holes, concluded that Stallings had been shot at close range, between six and twenty feet, with an operable firearm. The criminalist also examined the five spent shell casings recovered at the crime scene, concluding that they were 9-millimeter Winchester cartridge casings.
 {¶ 11} The police were unable to locate any other firearm in spite of a search of the vehicle belonging to Stallings, the purse belonging to Victoria Umbles, the garage and the surrounding area.
 {¶ 12} In August of 2006, Sergeant Dan McCartney received information that appellant had fled to Virginia. He notified the FBI fugitive task force for assistance in locating him. After tracking phone calls that appellant had apparently been making, they were able to trace him to the Newport News area of Virginia. In October, appellant turned himself in, and he was transported back to Canton. At the Canton Police Department, appellant waived his rights and gave a taped statement to Sergeant McCartney. The appellant's statement was consistent with his testimony at trial.
 {¶ 13} Appellant has timely appealed, raising the following three assignments of error: *Page 6 
 {¶ 14} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 15} "II. THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW BECAUSE OF MISCONDUCT OF THE PROSECUTOR.
 {¶ 16} "III. THE APPELLANTS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BECAUSE DEFENSE COUNSEL HAD AN ETHICAL CONFLICT BASED UPON HIS PRIOR REPRESENTATION OF A KEY PROSECUTION WITNESS."
 I. {¶ 17} In his First Assignment of Error, appellant maintains that his conviction for Murder is against the weight and sufficiency of the evidence. We disagree.
 {¶ 18} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 19} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. *Page 7 
 {¶ 20} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 21} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 22} In the case at bar, appellant was convicted of the offense of murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." To find the appellant guilty of Murder as charged in the case at bar, the jury would have to find that the appellant purposely caused the death of another. (2T. at 202-203).
 {¶ 23} R.C. 2901.22 Culpable mental states, provides:
 {¶ 24} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." *Page 8 
 {¶ 25} "Intent need not be proven by direct testimony. State v.Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, intent to kill `may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.' State v. Robinson (1954), 161 Ohio St. 213, 53 O.O. 96,118 N.E.2d 517, at paragraph five of the syllabus; State v. Eley (1996),77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648". State v. Stallings (2000),89 Ohio St.3d 280, 290, 2000-Ohio-159, 731 N.E.2d 159,171.
 {¶ 26} The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. State v. Mackey (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496,727 N.E.2d 920, citing State v. Widner (1982), 69 Ohio St.2d 267,431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); State v. Dunlap (1995), 73 Ohio St.3d 308, 316,652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 1096,133 L.Ed.2d 765. State v. Banks, 10th Dist. No. 01 AP-1179, 2002-Ohio-3341 at ¶ 24.
 {¶ 27} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496,691 N.E.2d 1058 (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting State v. Brown (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed,77 Ohio St.3d 1468, 673 N.E.2d 135; see, also, State v. Smith (1993),89 Ohio App.3d 497, 501, *Page 9 624 N.E.2d 1114 (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). Banks, supra, at ¶ 26.
 {¶ 28} Appellant admitted that he fired a nine-millimeter handgun five times in the direction of the victim. [2T. at 128; 143]. Given the close range and caliber of the firearm, a trier of fact could construe the intention to shoot as proof of an intention to kill. See, e.g.Smith, supra.
 {¶ 29} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of murder.
 {¶ 30} We hold, therefore, that the State met its burden of production regarding each element of the crime of murder and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 31} Appellant did not deny firing the weapon at Mr. Stallings; rather appellant's primary complaint is that the jury rejected his theory that he acted in self-defense.
 {¶ 32} Self-defense is a "confession and avoidance" affirmative defense in which the defendant admits the elements of the crime but seeks to prove some additional element that absolves the defendant of guilt. State v. White (Jan. 14, 1998), Ross App. No. 97 CA 2282. The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. In re: Collier (Aug. 30, 2001), Richland App. No. 01 CA 5, citing State v. Caldwell (1992),79 Ohio App. 3d 667. To establish self-defense, the following elements must be shown: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona *Page 10 
fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 33} Appellant chose to return to the market after the initial confrontation. Appellant returned to the home of his friend after leaving the market via a different route, choosing to walk through the alley, which took him past the garage. The evidence was uncontroverted, even by appellant, that it was appellant who approached Mr. Stallings inside of the garage. [2T. at 126]. Appellant pulled his gun, cocked it and pointed it at Mr. Stallings. Appellant admitted that Stallings did not have a weapon displayed during this encounter. Appellant disposed of the weapon and fled the State immediately after the shooting.
 {¶ 34} Upon review of the record, we conclude the trier of fact did not err under these facts and circumstances in finding that appellant failed to show (1) he was not at fault in creating the situation via his returning to the area and pulling a gun and (2) he believed he was in imminent danger of death or great bodily harm from Stallings.Robbins, supra. We are therefore not inclined to reverse the jury's rejection of the affirmative defense of self-defense.
 {¶ 35} Appellant's first assignment of error is overruled.
 II. {¶ 36} In his second assignment of error, appellant contends that prosecutorial misconduct resulted in reversible error. We disagree. *Page 11 
 {¶ 37} The prosecutor's duty in a criminal trial is two-fold. The prosecutor is to present the case for the State as its advocate and the prosecutor is responsible to ensure that an accused receives a fair trial. Berger v. U. S. (1935), 295 U. S. 78; State v. Staten (1984),14 Ohio App. 3d 197.
 {¶ 38} In McMullen v. Maxwell (1965), 3 Ohio St. 2d 160, the Ohio Supreme Court recognized that misconduct of a prosecutor may deprive a defendant of a fair trial and further held in State v. Maurer (1984),15 Ohio St. 3d 239 that misconduct can be made a ground of error if it deprives a defendant of a fair trial.
 {¶ 39} The United States Supreme Court and the Ohio Supreme Court have stated the test for reversal when an accused invokes a claim of prosecutorial misconduct.
 {¶ 40} In Chapman v. California (1967), 386 U.S. 18, the United States Supreme Court provided the following test:
 1. Was there prosecutorial misconduct?
 2. If so, was there a reasonable possibility that the evidence complained of might have contributed to the accused's conviction.
 {¶ 41} The Ohio Supreme Court has adopted a similar test in the capital case of State v. Maurer, supra and in State v. Smith, supra, not a capital case:
 1. Did the prosecutor's conduct amount to misconduct?
 2. If so, could this Court find, beyond a reasonable doubt, that the jury would have found the defendant guilty had there been no misconduct on the part of the prosecution. *Page 12 
 {¶ 42} In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144.
 {¶ 43} Appellant did not object to some of the comments to which he now claims error. Therefore, for those instances, we must find plain error in order to reverse.
 {¶ 44} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also,State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. *Page 13 Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 Prosecutorial Misconduct During Voir Dire {¶ 45} Appellant argues that the prosecutor committed misconduct that deprived him of a fair trial during voir dire, making a comparison between this case and two homicide prosecutions in California, i.e., the O.J. Simpson case and the Scott Peterson case. Appellant claims that the comments were designed to confuse the jury pool by equating this case with those cases that involved "the epitome of innocent victims." [Appellant's Brief at 16-17].
 {¶ 46} Upon review of the record it is apparent to this Court that the prosecutor's comment was merely an attempt to explain to the jury pool that while murder prosecutions it might be aware of because of their notoriety took many months, this murder prosecution was only going to last several days. [1T. at 71]. Appellant did not object, nor move for a mistrial.
 {¶ 47} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution.
Alleged Prosecutorial Misconduct During Cross-Examination of Defense Witness
 {¶ 48} Appellant next claims that the prosecutor deprived him of a fair trial because of his cross-examination of a defense witness, Amanda Jones. Appellant cites to questions in which the prosecutor referred to the shooting death of Stallings as a *Page 14 
murder. Appellant did not object to these questions, or otherwise seek any other curative remedy.
 {¶ 49} Obviously this was a case in which appellant was charged with murder and the State was charged with prosecuting this case and arguing that a murder had occurred. Appellant points to no authority to support his contention that the prosecutor's characterization of the acts as "murder" was prejudicial. We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution.
 Alleged Prosecutorial Misconduct During Closing Arguments {¶ 50} Appellant next claims that the prosecutor's comments during closing arguments deprived him of a fair trial.
 {¶ 51} The first challenge concerns the reference by the prosecutor that appellant had to return to the store to buy more beer after just being there for the same purpose:
 {¶ 52} ". . . And he walks back down to the store under the guise of I'm going to go buy a 12 pack. And they do. We know that they buy a 12 pack because he shares — he, he steals four of them, takes four of them". [2T. at 166]. Appellant did not object to this comment or move for a mistrial.
 {¶ 53} Appellant does not elucidate upon how this comment led the jury to conclude that he was guilty of murder. There is no dispute that appellant had purchased a twelve pack of beer and returned to the market to purchase a second twelve pack a short time later. *Page 15 
 {¶ 54} We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution.
 {¶ 55} Appellant next contends that the prosecutor's inadvertent slip of the tongue in describing the charged offense as aggravated murder so confused and prejudiced the jury that they convicted him apparently upon the basis of this comment.
 {¶ 56} The record establishes that the slip occurred at the conclusion of the opening portion of the State's closing argument, and appellants' objection was sustained by the trial court. The trial court immediately corrected the misstatement informing the jury that the charge was not aggravated murder. The prosecutor immediately responded in his address to the jury: "Guilty of murder, my mistake. Guilty of murder. Purposely caused the death of Jacky Lee Stallings and he did it with a gun.
 {¶ 57} It is clear from a review of the record that the statement was inadvertently and immediately acknowledged as incorrect by both the prosecutor and the trial judge. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution.
 {¶ 58} Appellant next takes issue with the prosecutor's rebuttal portion of closing argument. In responding to appellants' claims in closing argument that the police did not do a thorough job searching for Stallings' gun and in concluding its investigation after 48 hours, the prosecutor responded by characterizing this defense argument accordingly: *Page 16 
"Well, they would like you to think that the detectives showed up, they had a cup of coffee, they kicked the dirt around a little bit and called it a day." [2T. at 172-173].
 {¶ 59} Appellant did not object to these comments.
 {¶ 60} Appellant also takes issue with the prosecutor's comment about the "JFK magic bullet" theory in describing the defense argument about the paths of the bullets in this case. Appellant attempted in his closing argument to explain the gunshot wound to the back of Stallings as not inconsistent with his self-defense claim. The prosecutor criticized this attempt by reiterating the testimony of the coroner about this wound, and then labeling defense counsel's attempt to reconcile the path of this bullet with an angle more sympathetic to his self-defense posture as attempting to make the bullet traverse a path that defied the laws of physics, akin to the "JFK magic bullet" theory. Appellant did object to these comments.
 {¶ 61} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St. 2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v.Maurer (1984), 15 Ohio St. 3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St. 3d 136, 141,1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning."Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868,40 L.Ed.2d 431. *Page 17 
 {¶ 62} In State v. Draughn (1992), 76 Ohio App. 3d 666,602 N.E. 2d 790, this Court stated: "[i]n opening closing argument the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, `I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See State v. Smith (1984),14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. Id.
 {¶ 63} "As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' See State v. Strobel (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, `I believe the defendant is lying,' for the same reasons as above.
 {¶ 64} "In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that *Page 18 
these circumstances make the witnesses more or less believable and deserving of more or less weight.
 {¶ 65} "Generally the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.
 {¶ 66} "However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case.United States v. Solivan (C.A.6, 1991), 937 F.2d 1146". Id. at 670-71,602 N.E.2d at 793.
 {¶ 67} In the case at bar, the comments by the prosecutor were invited by the defense and the defense's characterization of a shoddy police investigation. Appellant has failed to establish beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141,1996-Ohio-227.
 {¶ 68} Finally, appellant attacks the prosecutor's comment regarding the hassling of Sidney Pride. In discussing Pride's testimony, the prosecutor noted that his credibility should be enhanced since he has been hassled for cooperating with law enforcement: "Well, what's Sidney Pride get for coming in here? Hassled." The trial court sustained *Page 19 
appellant's' objection, remarking to the jury, "The jury will disregard the last statement of the Prosecutor as being no evidence to support that." [2T. at 190].
 {¶ 69} A jury is presumed to follow instructions given it by the court. State v. Henderson (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237. Appellant has failed to establish beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St. 3d 136, 141, 1996-Ohio-227. SeeState v. Campbell (1994), 69 Ohio St.3d 38, 51 (where the Court opined that it was implausible for that defendant to argue that the jury determined a capital case based on a minor legal misstatement made by the state during voir dire).
 {¶ 70} For the forgoing reasons appellant's second assignment of error is overruled.
 III. {¶ 71} In his third assignment of error, appellant contends that he was denied effective assistance of trial counsel because said counsel had previously represented Sidney Pride, one of the State's witnesses on an unrelated criminal charge. We disagree.
 {¶ 72} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed. 2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674; State v. Bradley (1989),42 Ohio St.3d 136. *Page 20 
 {¶ 73} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 74} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra;Bradley, supra.
 {¶ 75} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 76} "In order to establish a violation of his Sixth Amendment right to effective assistance of counsel, a defendant who raised no objection to joint representation at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.[Cuyler v. Sullivan (1980), 446 U.S. 335, 348, 100 S. Ct. 1708, 1718, *Page 21 64 L.Ed.2d 333]. Until he does so, he has not established the constitutional predicate for his claim of ineffective assistance of counsel. Id. at 350, 100 S.Ct. at 1719. A reviewing court cannot presume that the possibility for conflict resulted in ineffective assistance of counsel. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction." State v. Manross (1988),40 Ohio St. 3d 180, 182, 532 N.E.2d 735, 737.
 {¶ 77} Unlike Cuyler v. Sullivan, supra, which addressed joint or simultaneous representation, this case involves successive representation. "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." Moss v.United States (6th Cir.2003), 323 F.3d 445, 459. Simultaneous and successive representation differs materially because in the latter, the attorney is no longer beholden to the former client. Because the Supreme Court has not held that successive representation gives rise to a presumption of prejudice, the Sullivan presumption does not necessarily control the successive representation cases. See, Gillard v.Mitchell (6th Cir.2006), 445 F.3d 883, 891.
 {¶ 78} Typically, in a successive representation case, the "fear" is that an actual conflict will adversely affect trial counsel's performance because "the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing confidential information." Moss v. United States (6th Cir. 2003),323 F. 3d 445, 467.
 {¶ 79} In the case at bar, any alleged conflict of interest did not adversely affect trial counsel's performance. Counsel did impeach Pride with Pride's prior criminal convictions as well as with facts Pride did not include in his statement to the police concerning the shooting in this case. Appellant merely alleges that trial counsel had conflicting obligations; however, appellant fails to provide any specific and credible *Page 22 
evidence linking his conviction to the conflict of interest. As such, appellant failed to demonstrate that trial counsel's conflict of interest deprived him of his constitutionally secured right to effective assistance of counsel.
 {¶ 80} Appellant's third assignment of error is overruled.
 {¶ 81} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 By: Gwin, P.J., Wise, J., and Edwards, J., concur *Page 23 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant. *Page 1