[Cite as *State v. Graham*, 2012-Ohio-1600.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 11 CA 15 |
| JOSEPH GRAHAM | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  10 CR 16


JUDGMENT:                                    Affirmed


DATE OF JUDGMENT ENTRY:        April 6, 2012


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DANIEL G. PADDEN                      ERIC ALLEN
PROSECUTING ATTORNEY           THE LAW OFFICE OF ERIC J. ALLEN
139 West Eighth Street                 713 South Front Street
Cambridge, Ohio  43725               Columbus, Ohio  43206

*Wise, J.*

{¶1}    Defendant-Appellant Joseph M. Graham appeals from his conviction, in the Court of Common Pleas, Guernsey County, on two counts of aggravated assault. The relevant facts leading to this appeal are as follows.

{¶2}    Appellant formerly dated Ashley Rogers and is the father of her child. At the time of the events at issue in this appeal, Ashley Rogers was dating Derek Holdren. On the night of January 6, 2010, Holdren and Rogers went together to an impromptu party at the home of Alisha Dillon, but ended up getting into an argument. Rogers left the party and went to a nearby bar, Bud's Pub. Rogers called appellant at about 1:30 AM on January 7, 2010 and asked him to give her a ride from Bud's Pub. Appellant came to that location and took Rogers back to his house on Woodlawn Avenue, where their child was staying that night.[1]

{¶3}    When Holdren found out where Rogers had gone, he proceeded to appellant's house along with Alisha Dillon. When Holdren arrived at the house, a physical fight ensued between the two men near the back yard fence, as more fully discussed infra. Holdren ended up with facial injuries and an apparent stab wound on his side.

{¶4}    On February 10, 2010, appellant was indicted by the Guernsey County Grand Jury on two counts of felonious assault, felonies of the second degree, and two counts of aggravated assault, felonies of the fourth degree. Arraignment was held on

---

[1]   Appellant apparently lived with his mother and brother at the Woodlawn Avenue address.

February 22, 2010, in the Guernsey County Common Pleas Court. Following arraignment, bond was set in the form of personal recognizance.

{¶5} On February 25, 2010, appellant filed a motion requesting that he proceed pro se. The court scheduled a status conference for May 18, 2010. At that time, the court set a final pre-trial for August 2, 2010, and scheduled a jury trial to begin on August 17, 2010. A capias warrant was thereafter issued by the court, and the trial was continued.

{¶6} On February 7, 2011, appellant was arrested on the warrant. A jury trial ultimately was commenced on April 5, 2011. Appellant proceeded pro se, with standby defense counsel. On April 7, 2011, the jury found appellant not guilty of two counts of felonious assault, but guilty of two counts of aggravated assault.

{¶7} Appellant was sentenced on May 27, 2011, to one year in prison with 118 days of jail time credit.

{¶8} On June 13, 2011, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶9} "I. THE CONVICTIONS FOR AGGRAVATED ASSAULT WERE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE AS APPELLANT HAD PROVEN BY A PREPONDERANCE OF THE EVIDENCE THAT HE WAS ACTING IN SELF-DEFENSE AND/OR IN DEFENSE OF OTHERS."

I.

{¶10} In his sole Assignment of Error, appellant contends his conviction on two counts of aggravated assault was against the manifest weight of the evidence. We disagree.

**{¶11}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.R.C. 2929.191 reads in pertinent part as follows:

**{¶12}** Ohio's aggravated assault statute, R.C. 2903.12, states in pertinent part as follows:

**{¶13}** "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

**{¶14}** "(1) Cause serious physical harm to another or to another's unborn;

**{¶15}** "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

**{¶16}** In the case sub judice, the State first called Cambridge police officer Dave Peoples. He recalled that he was dispatched to a suspected fight scene on January 7, 2010. As he approached the alley behind Woodlawn Avenue, he saw a black truck

come to a stop and a male driver, later identified as Holdren, roll out the door. After assuring that no one else was in the truck, he approached Holdren, who was on the ground and had injuries to his face and what appeared to be a stab wound in his left-side ribcage. Tr. at 144-147.

{¶17} Cambridge police lieutenant John Milam testified next. He came to the scene of Holdren's truck near the alley, and then proceeded to appellant's house. Appellant was outside, in an "agitated state." Tr. at 153. Appellant admitted to having been in an altercation. Lieutenant Milam did not see any wounds or blood on him. Id.

{¶18} Cambridge detective Greg Clark also testified. He responded to the scene in appellant's yard on the night in question. He noticed a lot of blood at the scene, and he also observed that appellant's hands were wet, "like he had just washed his hands." Tr. at 161. On cross-examination, Clark conceded that no knife or weapon was found at the scene.

{¶19} Alisha Dillon, the hostess of the party earlier on the night of January 6, 2011, recalled that when she and Holdren pulled up into the alley behind appellant's house, appellant yelled from an upstairs window and then came out onto the back porch. At the time, he was wearing work-type boots. Dillon further saw appellant come down off the porch and observed both men run at each other. However, she recalled the physical fight taking place "close by the [backyard] fence." Tr. at 183. She stated that appellant struck Holdren, either by fist, elbow, or by kicking, about thirty times. Tr. at 191.

{¶20} Ashley Rogers testified as a court's witness. She told the jury that Holdren had not been drinking at the party, but that he was on prescription Klonopin, an anti-

anxiety medication. However, she recalled that Holdren was "acting nuts" at the party. Tr. at 232. Rogers also recalled that Holdren was actually backing up toward his truck when the blows began. She saw Holdren take a swing, but Holdren subsequently testified that he only swung at appellant after he had been stabbed. Rogers noted that appellant was outside during the entire fight incident, including the point when the police arrived. She had earlier described appellant as "obsessed with knives." Tr. at 256.

{¶21} The State also called the victim, Derek Holdren. He testified that he got out of the truck in the alley, and was almost immediately stabbed in the left lung by appellant. He fell to the ground, but the attack continued, in his recollection, as follows:

{¶22} "Kicks came first maybe. It was steel-toed boots to the face, and he kept spitting on me. At one point he sat on my chest and was choking me. I couldn't breathe because of the hole in my lung, but then he sat on my chest and was choking me. I was getting kicked. I kept blacking in and out when it was all happening ***." Tr. at 281.

{¶23} Finally, the jury heard the testimony of Cambridge police captain Randy LePage, as well as a video deposition of Clark J. Leslie, M.D.

{¶24} In his defense case, appellant called his brother and his mother as witnesses, as well as Captain LePage. Appellant's brother, Eric Graham, testified that Holdren made threats at the scene that he was going to kill or shoot appellant. See Tr. at 350.

{¶25} Appellant's chief argument on appeal is that the evidence established he lawfully engaged in self-defense. To establish the legal defense of self-defense, the

following elements must be shown: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. *State v. Jones,* Stark App.Nos. 2007-CA-00041, 2007-CA-00077, 2008-Ohio-1068, ¶ 32, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus. If the defendant fails to prove any one of these elements by a preponderance of the evidence, then the defendant has failed to demonstrate that he acted in self-defense. *State v. Cassano* (1996), Ohio St. 3d 94, 107.

{¶26} As the State correctly proposes in its brief, the evidence in this case patently reveals that appellant could have avoided the bloodshed completely by not leaving his home and instead seeking police assistance. Appellant argues that Holdren left a threatening message on his voice mail on the night in question, but there was no evidence that appellant heard it before the altercation in the back yard. Furthermore, in order to successfully present a defense of self-defense, appellant is at least required to show that the only reasonable means of escape was by the use of force. Similar to the circumstances of *State v. Hillen*, Fairfield App.No. 04CA65, ¶ 22, 2005-Ohio-6193, wherein a defendant unsuccessfully argued self-defense in a felonious assault case, appellant herein chose to exit the confines of his home at night and pursue his antagonist, thus escalating the situation into a violent confrontation outside. Upon review, we find the jurors could properly conclude that the evidence does not support the argument that appellant had no means of escape. The jurors, as the firsthand triers

of fact, were patently in the best position to gauge the truth. Upon review, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction be reversed and a new trial ordered.

**{¶27}** Appellant lastly argues that the Castle Doctrine (see S.B. 184) should have been considered in this matter. The Castle Doctrine is presently codified in part under R.C. 2901.05(B), which states in pertinent part as follows:

**{¶28}** "(B)(1) Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

**{¶29}** " ***.

**{¶30}** "(B)(3) The presumption set forth in division (B)(1) of this section is a rebuttable presumption and may be rebutted by a preponderance of the evidence."

**{¶31}** In *State v. Johnson*, Cuyahoga App.No. 92310, 2010-Ohio-145, the court summarized as follows: "Under the Castle Doctrine, a person is presumed to have acted in self-defense when attempting to expel or expelling another from their home who is unlawfully present. Further, under the Castle Doctrine, a person attempting to expel or expelling another is allowed to use deadly force or force great enough to cause serious bodily harm." Id. at ¶ 18. There is also no duty to retreat when inside one's home. *Id.*

{¶32} Upon review, we hold the Castle Doctrine does not apply under the facts and circumstances of the case sub judice, as appellant was not in his residence or in a vehicle occupied by himself when the assault actions took place.

{¶33} Appellant's sole Assignment of Error is therefore overruled.

{¶34} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed.

By: Wise, J.

Delaney, P. J., and

Farmer, J., concur.

_____

_____

_____

                                        JUDGES

JWW/d 0313

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                            :
                                         :
    Plaintiff-Appellee               :
                                         :
-vs-                                     :          JUDGMENT ENTRY
                                         :
JOSEPH GRAHAM                            :
                                         :
    Defendant-Appellant              :          Case No. 11 CA 15


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is affirmed.

Costs assessed to appellant.


                               _____


                               _____


                               _____

                                         JUDGES