[Cite as *State v. Stephenson*, 2014-Ohio-670.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-609 |
| v. | : | (C.P.C. No. 13CR-02-679) |
| Beau Stephenson, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 25, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Javier H. Armengau*, for Stephenson.

APPEAL from the Franklin County Court of Common Pleas

McCORMAC, J.

{¶ 1} Defendant-appellant, Beau Stephenson, appeals from an order of the Franklin County Court of Common Pleas granting a motion filed by the state seeking disqualification of Stephenson's defense counsel in the underlying criminal case.

{¶ 2} Stephenson is currently awaiting trial pursuant to his indictment on charges arising from the murder of Christopher Manley on January 28, 2013. Disqualification of his privately retained trial counsel, attorney Javier H. Armengau, by the trial court is based upon dual representation by attorney Armengau of Stephenson and Stephenson's girlfriend, Cassandra Pack, who is also implicated in the murder.

{¶ 3} The facts and procedural history of the case are not unduly complicated. On January 28, 2013, Christopher Manley was shot and killed in his home in Columbus. On

February 8, 2013, the Franklin County Grand Jury indicted Stephenson on an array of charges arising out of this crime:  aggravated robbery, kidnapping, aggravated murder, murder, attempted murder, all with firearm specifications, tampering with evidence, and having a weapon while under disability.  Attorney Armengau entered his appearance on behalf of Stephenson on February 11, 2013, and Stephenson was arraigned on February 15, 2013.  Stephenson has been incarcerated since his arrest.

{¶ 4}  Prior to the murder, Stephenson had another brush with the law.  On December 3, 2012, he was a passenger in a vehicle driven by Cassandra Pack.  After a traffic stop, police found narcotics on Pack and arrested her and charged her with a misdemeanor count of drug abuse.  The same search pursuant to a traffic stop yielded a syringe in Stephenson's possession, leading to misdemeanor charges of possession of paraphernalia.  Attorney Armengau, already representing Stephenson in the murder case, entered an appearance on February 27, 2013 on behalf of Pack in her drug case. After further lab analyses, Pack was indicted on two felony counts of drug possession on April 23, 2013.

{¶ 5}  In the interval between this initial criminal episode and the subsequent indictment for murder, Stephenson attempted to cooperate with investigating officers on other matters.  Accounts differ on whether Stephenson formally became a confidential police informant, but he undoubtedly met with police several times to provide information, and on some of these occasions Pack was present.

{¶ 6}  Ultimately, investigators learned that not only Stephenson but also Pack had a role in Manley's murder.  According to the state's information, on the day of the murder, Pack drove Stephenson to Manley's trailer home, where he robbed Manley of drugs and money, then fatally shot him.  Pack thereafter drove Stephenson to a hotel, got a room for him in her name and, after leaving Stephenson at the hotel, went to retrieve new clothing for him from their home.  Thereafter, Pack drove Stephenson to help him dispose of evidence from the shooting.  All of this information was obtained directly from Pack through police interviews in which she admitted her involvement with Stephenson and her participation in his activities on the day of the murder.

{¶ 7}  The state moved to disqualify attorney Armengau from Stephenson's defense on May 15, 2013, based upon his dual representation of Stephenson and Pack and

the strong likelihood of a conflict due to their adverse interests arising out of their alleged respective roles in the murder.  The trial court granted the motion, and Stephenson brings the following assignment of error:

> THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT A CONFLICT OF INTEREST EXISTED THAT WOULD PRECLUDE DEFENSE COUNSEL FROM REPRESENTING APPELLANT IN THE CASE BELOW.

{¶ 8}   One aspect of the constitutional right to effective assistance of trial counsel is a presumptive right to employ counsel of the defendant's choosing.  *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *Chandler v. Fretag*, 348 U.S. 3, 9 (1954).  This right to choice of counsel is rooted in part upon the inevitable reality that the criminal defendant is the one to suffer the consequences if the defense fails.  *Faretta v. California*, 422 U.S. 806, 819-20 (1975).  The defendant's right to oppose disqualification of his chosen counsel is therefore rooted in the constitutional guarantee of effective assistance of trial counsel:

> The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall have the assistance of counsel for his defense. [*Wheat v. U.S.*, 486 U.S. 153, 158 (1988).] The "aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* There is a presumptive right to employ one's own counsel. [*State v. Keenan,* 81 Ohio St.3d 133, 137 (1998).] That presumption may be overcome by a showing of an actual or serious potential for conflict. *Id.,* citing *Wheat.*

*State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 25.

{¶ 9}   "A pretrial ruling removing a criminal defendant's retained counsel of choice is a final order subject to immediate appeal."  *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, syllabus.  "[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion."  *State ex rel. Keenan v. Calabrese*, 69 Ohio St.3d 176, 180 (1994).  " ' "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." ' "  *Crosky* at ¶ 24, quoting *Serra v. Michigan Dept. of Corr.*, 4 F.3d 1348, 1354 (6th Cir.1993), quoting *Wheat v. U.S.*, 486 U.S. 153, 162-63 (1988). In keeping with this

deferential standard of review, we examine the trial court's determination with an eye towards the trial court's superior ability to ascertain the context in which the ruling was made. *Crosky* at ¶ 24.

{¶ 10} There is no dispute that some dual representation occurred here. In addition to continuously representing Stephenson commencing with the date of the murder indictment on February 8, 2013, attorney Armengau filed a notice of appearance in Pack's misdemeanor drug case on February 27, 2013. Only after the state filed its motion for disqualification on May 15, 2013 did attorney Armengau move to voluntarily withdraw from representation of Pack. We note ab initio that Stephenson cannot rely on a waiver executed by Pack purporting to waive her objections to any prejudice resulting from dual representation. Pack did not execute the waiver until a month after the trial court's ruling on the motion to disqualify. The trial court did not have the opportunity to consider it, and we decline to do so in the first instance.

{¶ 11} Because attorney Armengau withdrew from representation of Pack, the potential for conflict here arises not from ongoing and concurrent dual representation but from successive dual representation. "Thus, the situation was one of successive, not joint, representation. Successive representation occurs when counsel has previously represented a co-defendant or witness. *McFarland v. Yukins* (C.A.6, 2004), 356 F.3d 688, 701, citing *Moss v. U.S.* (C.A.6, 2003), 323 F.3d 445, 459. Successive representation may give rise to an actual conflict of interest. *Moss*, at 459; *U.S. v. Culp* (M.D.Fla., 1996), 934 F.Supp. 394, 397-398." *Crosky* at ¶ 27.

{¶ 12} Stephenson now asserts that mere multiple representation will not support an order preventing a criminal defendant from retaining counsel of his choice. Indeed, such representation does not *invariably* pose the risk of conflict of interest and thus compromise the prospect of a fair trial. *Holloway v. Arkansas*, 435 U.S. 475, 482-83 (1978). Thus, the presumption of the defendant's right to employ his chosen counsel may be overcome only by demonstration of actual conflict or potential for conflict. *Keenan*, 81 Ohio St.3d at 137. There must more than a mere theoretical division of loyalties. *State v. Hunter*, 1st Dist. No. C-090569, 2012-Ohio-2859, ¶ 53.

{¶ 13} Stephenson stresses that the risk of conflict is less clear-cut in successive representation cases: "Simultaneous and successive representation differs materially

because in the latter, the attorney is no longer beholden to the former client." *State v. Jones*, 5th Dist. No. 2007-CA-00041, 2008-Ohio-1068, ¶ 77. As such, successive representation does not give rise to the same presumption of prejudice as simultaneous representation. *Id.*, citing *Gillard v. Mitchell*, 445 F.3d 883, 891 (6th Cir.2006). That is not to say, however, that such multiple representation does not present any risk of conflict:

> A conflict of interest may arise in a successive representation situation where (1) counsel's earlier representation of the witness or co-defendant was substantially and particularly related to counsel's later representation of defendant; or (2) counsel actually learned particular confidential information during the prior representation of the witness or co-defendant that was relevant to defendant's case.

*Crosky* at ¶ 27, citing *Enoch v. Gramley*, 70 F.3d 1490, 1496 (7th Cir.1995).

{¶ 14} The authorities presented by Stephenson on appeal are, for the most part, distinguishable as they involved post-conviction proceedings in which a criminal defendant was denied a choice of counsel or affected by an alleged conflict of interest on the part of counsel. In the present, the trial court was presented with the rather different problem of anticipating potential conflict. As such, the trial court's ruling is inherently preemptive and cannot be tested by evidence of actual conflict. We must determine whether the trial court abused its discretion in ascertaining the probability of conflict. On the present facts, we find no such abuse of discretion on the part of the trial court.

{¶ 15} While Stephenson now argues that attorney Armengau, in his representation of Pack, learned nothing from her that would not eventually be learned by the police in the course of investigation, this addresses only the peripheral aspects of the alleged conflict. As the state points out, there is a substantial possibility, if not a probability, that given Pack's admitted conduct on the day of the murder she could be charged with murder on a complicity theory. Pack will likely be, at the least, a key witness for the prosecution in the case against Stephenson, where she will be subject to cross-examination by her own former counsel.

{¶ 16} "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Moss v. U.S.*, 323 F.3d 445, 460 (6th Cir.2003). The attorney may "be

tempted to use confidential information to impeach the former client; or * * * may fail to conduct a rigorous cross-examination for fear of misusing his confidential information." *U.S. v. Agosto*, 675 F.2d 965, 971 (8th Cir.1982). "When an attorney attempts to represent his client free of compromising loyalties, and at the same time preserve the confidences communicated by a present or former client during representation in the same or a substantially related matter, a conflict arises." *Id.*

{¶ 17} Stephenson's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

_____