**[Cite as *State v. Morris*, 2025-Ohio-1039.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| GARRICK MORRIS | : | Case No. 2024 CA 00011 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Fairfield County
Court of Common Pleas, Case No.
2021 CR 00500

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        March 25, 2025

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

R. KYLE WITT        W. JOSEPH EDWARDS
Fairfield County Prosecuting Attorney        511 S. High Street
Columbus, Ohio 43215

By: BRIAN T. WALTZ
Assistant Prosecuting Attorney
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Baldwin, P.J.*

**{¶1}** The appellant, Garrick Morris, appeals the March 12, 2024, judgment of conviction and sentence of the Fairfield County Court of Common Pleas. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** On December 8, 2021, the Fairfield County Grand Jury returned an indictment charging the appellant with two counts of Rape in violation of R.C. §2907.02 and two counts of Gross Sexual Imposition in violation of R.C. §2907.05.

**{¶3}** On March 5, 2024, the matter proceeded to a jury trial.

**{¶4}** At trial, Officer Clark testified that he is employed with the Pickerington Police Department. As part of his duties, he is a school resource officer who looks out for the safety and security of the students. He stated that on October 18, 2021, he spoke with the victim, K.T.M., in the school guidance counselor's office. In that conversation, K.T.M. was visibly upset. K.T.M. told Officer Clark that she had been sexually assaulted in her home in Fairfield County. K.T.M. told Officer Clark that she would be more comfortable speaking with a female officer.

**{¶5}** Officer Clark continued that he was present when A.M., K.T.M.'s grandmother, arrived at school. Officer Clark described A.M. as angry and aggressive toward K.T.M., not nurturing or sympathetic.

**{¶6}** Next, Deputy Tabitha Stephens testified that she is a school resource officer employed by the Fairfield County Sheriff's Department. When Deputy Stephens arrived, she noted that K.T.M. was visibly upset. She was trembling, her eyes were red, and she was crying. K.T.M. then described how the appellant abused her. The appellant placed

K.T.M. in weird positions, put his hands on her private areas, and he put his finger inside her vagina, causing bleeding and stinging.

{¶7} Deputy Stephens described A.M.'s attitude as unsympathetic and unbelieving. Deputy Stephens transported K.T.M. to the child advocacy center because K.T.M. said she did not feel comfortable riding with A.M.

{¶8} Next, K.T.M. testified that she was born in 2008. She currently attends high school in the ninth grade. A.M. and the appellant are her grandparents. She lived with them in Fairfield County, Ohio. Her cousins and siblings also lived with her grandparents. In October of 2021, she was twelve years old.

{¶9} K.T.M. continued her testimony, describing the appellant's abuse. It started with inappropriate touching such as "wedgies." He gave them to all the kids in the house. The boys were given "wedgies" from behind and the girls from the front. He would do this in front of other people. It was very uncomfortable. She asked him to stop, but he did not. Then he started laying her down on her back, rubbing the back of his hand on her privates before pulling up on the underwear from the inside. It progressed further to him rubbing his fingers on her vaginal area after he laid her down on her back. She started lying about being on her period so he would refrain from the "wedgies." She reported the touching about a week after it happened.

{¶10} She was in her room with her younger cousin. She was on the bed, and the appellant was rubbing his genitals on K.T.M. while he was giving her a "wedgie." She asked her younger cousin for help, but the cousin thought it was a big joke. Her younger cousin left the room, and the appellant stuck his fingers in the appellant's vagina. She felt

pain and realized that she was bleeding. She began crying and told him to stop. The appellant called her a cry baby and told her to "shut up."

{¶11} K.T.M. described a second incident about a month before. Again, the appellant was rubbing his hand on her genitals. No one else was around. She closed her eyes and felt a significant amount of pain and felt like something was inside her vagina.

{¶12} In November of 2023, K.T.M. visited her friend's house. She left her phone unattended. When she woke up the following day, her social media accounts were all deleted, her emails were gone, and her text messages were deleted except for a couple from A.M. Later, K.T.M. discovered a message was sent from her phone saying, "I'm sorry, I made everything up." K.T.M. told officers that her friend, S.W., may have sent it.

{¶13} Cody Tatum then testified he is the executive director at the Harcum House, a local child advocacy center. The advocacy center performs forensic interviews of child abuse victims, forensic medical examinations, provides therapy, and assists caregivers with food security issues.

{¶14} Next, Madison Collier testified that she is employed as a forensic interviewer at the Harcum House. She interviewed K.T.M. on October 18, 2021. K.T.M. disclosed multiple incidents of sexual abuse by the appellant during the interview.

{¶15} Rhonda Wells then testified that she is a registered nurse with the Harcum House. She is the Patient and Team Services Manager. Her functions are to supervise the child/family specialists, and she is a pediatric and adolescent sexual assault nurse examiner. She examined K.T.M. and noted two injuries. She observed a torn hymen and an abrasion on the posterior of the torn hymen. Nurse Wells testified that these injuries were consistent with the victim's history of digital penetration of her vagina. She testified

that this was definitely a penetrative injury to the victim's vagina. She noted the tear in the hymen would have been painful and caused bleeding. She noted no bike riding, falling, or "wedgie" could have caused this injury.

**{¶16}** The State then rested its case.

**{¶17}** The appellant testified in his own defense. He admitted that he gave "wedgies" to K.T.M. even though she asked him to stop. He did not respect her boundaries about touching, even though it drove her to tears. He denied committing the offenses or knowing what could have caused the injuries to K.T.M.

**{¶18}** After the appellant testified, he attempted to call S.W., a juvenile, as a witness. S.W. informed the parties that he intended to invoke his Fifth Amendment right against self-incrimination if he were to testify regarding statements he made to police. S.W. was represented by an attorney who had represented the appellant and A.M. in another matter. The court informed the parties that it would conduct an in-camera interview to determine whether the witness had a valid right to invoke the Fifth Amendment. The appellant did not object.

**{¶19}** After the in-camera interview, the court informed the appellant that the appellant may call the witness, the witness does have the right to invoke the Fifth Amendment, and the trial court would be monitoring the questions. The appellant decided not to call the witness, nor did they object to the witness being allowed to invoke the Fifth Amendment.

**{¶20}** During the prosecution's closing argument, the State showed two photos of K.T.M., one taken at the time of the forensic interview and one taken in the courthouse at the time of the trial.

{¶21} The jury returned a verdict of guilty on all four counts of the indictment.

{¶22} On March 22, 2024, the appellant was sentenced to a total of thirteen years to life in prison.

{¶23} The appellant filed a timely notice of appeal and raised the following six assignments of error:

{¶24} "I. THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRA HIS DUE PROCESS RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS (RECORD REFERENCE: APP. PP.1-6 JUDGEMENT [sic] ENTRY).

{¶25} "II. THE TRIAL COURT'S DECISION TO CONDUCT A SECRET HEARING IN CHAMBERS WITHOUT COUNSEL PARTICIPATING AND DETERMINE THAT A DEFENSE COULD NOT TESTIFY PLAINLY VIOLATED DEFENDANT'S DUE PROCESS RIGHT TO CALL WITNESSES ON HIS BEHALF CONTRA THE FEDERAL AND STATE CONSTITUTIONS (RECORD REFERENCE: VOLUME IV, PP 618-631)[sic]

{¶26} "III. THE STATE'S IMPROPER CLOSING ARGUMENT DEPRIVED DEFENDANT-APPELLANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND OHIO CONSTITUTIONS (RECORD REFERENCE: TR. VOL. IV PP. 696).

{¶27} "IV. THE TRIAL COURT ERRED BY DENYING DEFENDANT-APPELLANT'S MOTION FOR MISTRIAL RESULTING FROM THE PROSECUTIONS [sic] CLOSING ARGUMENT [sic] DEPRIVING HIM OF HIS DUE PROCESS RIGHT

UNDER THE FEDERAL AND OHIO CONSTITUTIONS (RECORD REFERENCE: TR. VOL. IV PP. 6960.

**{¶28}** "V. THE TRIAL COURT ERRED BY FAILING TO HOLD A HEARING REGARDING A CONFLICT AND/OR DETERMINING THAT A CONFLICT EXISTED IN RELATION TO AN ATTORNEY WHO HAD PREVIOUSLY REPRESENTED DEFENDANT-APPELLANT AND DURING TRIAL REPRESENTED A KEY WITNESS (S.W.) THEREBY DEPRIVING DEFENDANT OF HIS DUE PROCESS RIGHTS UNDER THE FEDERAL AND OHIO CONSTITUTIONS (RECORD REFERENCE: TR. VOL. IV PP.622-623).

**{¶29}** "VI. IF THE COURT DETERMINES THAT PLAIN ERROR DOES NOT EXIST IN RELATION TO ANY ERROR RAISED IN THIS APPEAL, DEFENDANT-APPELLANT WOULD ASK THE COURT TO REVIEW SAID ASSIGNMENTS TO DETERMINE IF HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS."

**{¶30}** For the purpose of judicial economy, we shall address the appellant's assignments of error out of order.

## V.

**{¶31}** In the appellant's fifth assignment of error, the appellant alleges the trial court erred in failing to hold a hearing regarding a conflict with the attorney of an individual who never testified at trial or provided evidence at trial. We disagree.

## ANALYSIS

**{¶32}** A trial court has a duty to inquire into potential conflicts only where it knows or reasonably should know of the attorney's possible conflict of interest in the

representation of a criminal defendant. *State v. Gilliard*, 1997-Ohio-183. This "is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict, such as which 'inheres in almost every instance of multiple representation.' " *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S.Ct. 1237 (2002), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708 (1980).

**{¶33}** Conflicts may arise when an attorney represents clients with different interests simultaneously or when an attorney representing a defendant previously represented codefendants or trial witnesses. *State v. Buck*, 2017-Ohio-8242 (1st Dist.), ¶91. "Simultaneous and successive representation differs materially because in the latter, the attorney is no longer beholden to the former client." *State v. Jones*, 2008-Ohio-1068 (5th Dist.), ¶77. For this reason, "[i]t is more difficult for a defendant to show that counsel actively represented conflicting interests in cases of successive rather than simultaneous representation." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir.2003).

**{¶34}** The record does not contain any information that establishes the existence of a conflict. Furthermore, S.W. was not called as a witness and no proffer was given as to S.W.'s anticipated testimony. The record does not contain any evidence showing how S.W.'s attorney's representation in the current case conflicted with the duties the attorney owed the appellant in a previous adoption matter. As such, this argument is without merit.

**{¶35}** Accordingly, the appellant's fifth assignment of error is overruled.

**II.**

**{¶36}** In the appellant's second assignment of error, the appellant argues the court erred in holding an in-camera interview of S.W. on his decision to invoke his Fifth Amendment right against self-incrimination. We disagree.

**ANALYSIS**

**{¶37}** "The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself." *State v. Arnold*, 2016-Ohio-1595, ¶30. "[T]he privilege against self-incrimination is accorded liberal construction in favor of the right it was intended to secure." *Id.* at ¶31. It applies with equal force to "witnesses who would incriminate themselves by giving responses to questions posed to them." *Id.*

**{¶38}** The witness's right to invoke the Fifth Amendment right against self-incrimination is not absolute. *Id.* at ¶43. The bare assertion of the privilege does not provide automatic justification for a witness to refuse to testify. *Id.* at ¶¶45-46. The witness must also assert a basis for asserting the privilege. *Id.* at ¶44. The witness's burden is not onerous. *Id.* At the minimum, the witness "must establish that he or she is faced with some authentic, objectively reasonable danger of incrimination." *Id.*, citing *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814 (1951).

**{¶39}** It is the duty of the trial court to inquire into the witness's basis for asserting the privilege to determine if it is justified. *Arnold* at ¶46. The Ohio Supreme cautioned that the trial court must "tread lightly" in order to protect the witness from surrendering the protection of the privilege in the process. *Id.* at ¶47.

**{¶40}** In the case sub judice, the trial court held an in-camera interview to determine the basis for the witness's invocation of his Fifth Amendment rights. The appellant has failed to support his assertion that the trial court erred by excluding the appellant from the in-camera interview with any case law. We find the trial court's precautions ensured the witness's invocation of his Fifth Amendment right against self-

incrimination were justified while protecting the witness from surrendering the protection of the privilege. Therefore, we find the trial court did not err in holding an in-camera interview to determine if the witness's invocation of the Fifth Amendment was justified.

**{¶41}** Accordingly, the appellant's second assignment of error is overruled.

### III., IV.

**{¶42}** In the appellant's third and fourth assignments of error, the appellant argues the trial court erred in denying the appellant's motion for a mistrial based upon pictures shown and remarks made by the prosecutor during the closing argument. We disagree.

### ANALYSIS

**{¶43}** The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 184 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *Lott*, supra, 51 Ohio St.3d at 166 (1990).

**{¶44}** The appellant, in the case sub judice, specifically argues that the prosecutor's made pop culture references and showed two photographs of the victim which were not admitted into evidence. The appellant only summarily argues these actions prejudiced. The assignments of error did not contain any citation to the rules of evidence, rules of procedure, statute or case law where such instances are inappropriate.

Furthermore, the appellant fails to offer any explanation past a summary statement that this conduct prejudiced the appellant.

{¶45} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 2009-Ohio-3299, ¶14. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 2009-Ohio-1211, ¶16.

{¶46} We find the appellant has failed to support its argument with citations to case law, the rules of evidence, the rules of criminal procedure, statute, or an explanation as to the inappropriateness of the prosecutor's conduct. Accordingly, the appellant has failed to establish the trial court erred in overruling his motion for a mistrial and establishing the State's closing argument was improper.

{¶47} Accordingly, the appellant's third and fourth assignments of error are overruled.

**I.**

{¶48} In the appellant's first assignment of error, the appellant argues that his convictions were against the manifest weight of the evidence. We disagree.

**STANDARD OF REVIEW**

{¶49} Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380. The Ohio Supreme Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party

having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra*, at 1594.

*Id.* at 387.

The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Tibbs.* [v. Florida] 457 U.S. at 42, 102 S.Ct. at 2218 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

Further, the Court in *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978), stated:

[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at 80, fn. 3.

## ANALYSIS

**{¶50}** The appellant argues that his convictions for Rape and Gross Sexual Imposition were against the manifest weight of the evidence. We disagree.

**{¶51}** R.C. §2907.02 states, in pertinent part:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶52}** R.C. §2907.05 states, in pertinent part:

(A)     No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶53}** In the case sub judice, the State produced testimony from the victim that the appellant digitally penetrated her vagina on two separate occasions, and when the appellant gave her "wedgies" from the front, he would routinely rub the back of his hand on her vagina. This happened multiple times.

**{¶54}** The appellant only asked us to consider a text message from her phone saying that she made up the allegations. The victim testified that she did not send this and that her phone was left unattended at the time. Her former boyfriend, S.W., had access to the phone and knew her passcode. The appellant believes she is lying about this. However, as a reviewing court, we are "bound to give [the evidence] that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77 (1984).

**{¶55}** Therefore, based upon our review of the entire record, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice. The appellant was not convicted against the manifest weight of the evidence.

**{¶56}** Accordingly, the appellant's first assignment of error is overruled.

## VI.

{¶57} In the appellant's sixth assignment of error, the appellant asked us to review the assignments of error and determine if the appellant was denied effective assistance of trial counsel. The appellant fails to comply with appellate briefing requirements by not fully briefing this assignment of error and asks the court to perform the analysis for him.

{¶58} Appellant's brief does not comply with App.R. 16(A)(7), which provides:

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the *reasons in support of the contentions*, with citation to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary. (Emphasis added.)

{¶59} The appellant summarily argues that it is "possible" that trial counsel's failure to object to the above assignments of error rises to the level of ineffective assistance of counsel requiring reversal and asks the court to provide an analysis. Again, "[i]f an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 2009-Ohio-3299, ¶14. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 2009-Ohio-1211, ¶16. Therefore, we may disregard assignments of error the appellant presented for review due to lack of briefing. *State v. Romy*, 2021-Ohio-501 (5th Dist.). Accordingly, the appellant has failed to brief this assignment of error adequately.

**{¶60}** The appellant's sixth assignment of error is overruled.

## CONCLUSION

**{¶61}** Based on the foregoing, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed.

By: Baldwin, P.J.

King, J. concur.

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

{¶62} I concur in the majority's analysis and disposition of Appellant's Assignments of Error I, II, IV, V, and VI.

{¶63} I concur in the majority's disposition of Appellant's Assignment of Error III. I find it was improper for the prosecutor to show the jurors two photographs of the victim during closing argument not offered or admitted into evidence. However, I find such to be harmless.