[Cite as *State v. Brock*, 2019-Ohio-3195.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-112 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-0689 |
| | : | |
| JERAMY LEE BROCK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
  Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, P.O. Box 291771, 101 Southmoor Circle NW, Kettering, Ohio 45429
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Following a jury trial, Jeramy Lee Brock was found guilty of burglary, violating a protection order, obstructing official business, and assault. The trial court entered a judgment of conviction and sentenced Brock to two years for the burglary offense, 24 months for the protection order violation, 12 months for obstructing official business, and 18 months for assault; the sentences for burglary and the protection order violation were to be served concurrently, and the remaining sentences were to be served consecutively to each other and to Brock's other sentences. The judgment of the trial court will be affirmed.

## Factual and Procedural Background

{¶ 2} On November 6, 2017, a Clark County grand jury indicted Brock on five counts: 1) burglary in violation of R.C. 2911.12(A)(2), a second-degree felony; 2) violating a protection order in violation of R.C. 2921.27(A)(1), a third-degree felony; 3) obstructing official business in violation of 2921.31(A), a fifth-degree felony; 4) vandalism in violation of R.C. 2909.05(B)(1)(a), a fifth-degree felony; and 5) assault in violation of R.C. 2903.13(A), a fourth-degree felony, with a specification that the victim was a peace officer performing his or her official duties. Brock appeared with counsel and entered a plea of not guilty. On a motion by the State, the trial court subsequently dismissed Count Four (vandalism) of the indictment.

{¶ 3} On June 29, 2018, the case proceeded to a jury trial. Saraha McNeil testified that Brock is the father of her four minor children. McNeil said that after her relationship with Brock ended, she sought and obtained a protection order prohibiting Brock from being at her residence, where she lived with her grandfather and the four children.

According to McNeil, on October 30, 2017, while that protection order was in place, Brock contacted her through Facebook Messenger, asking where McNeil was, and she instructed him not to get "dropped off" at her residence. (Trial Tr., p. 124.)

{¶ 4} McNeil stated that later that day, she heard a knock at her door and opened it to find Brock. "I could tell he'd been drinking; and he just basically said he wanted to see his children before he had court the next day * * *." (*Id.*, p. 125.) McNeil continued:

> And I basically told him no. I didn't close or lock the door, but I closed the
> door a little bit, ran straight to the kitchen to get my phone. He came in and
> sat down. I sat there – I'm not going to lie -- to keep the situation cool. I
> carried on a conversation with him, and I told him it was time to go. I got
> [sic] to go to work. That's when he refused to go. He started getting angry.

(*Id.*)

{¶ 5} McNeil said that she had headed to her phone when Brock arrived in order to be prepared to call 911 for "[p]rotection." (*Id.*, p. 126.) Based on past experience with Brock, she feared "ma[king] him madder," so when she dialed 911 she did not speak to the dispatcher, leaving the line open. (*Id.*, pp. 126-127.) Over defense counsel's objection, the State played a recording that McNeil identified as her 911 call (State's Exh. 4); she further identified the voice on that recording saying "you're scaring me" as her own. (Trial Tr., p. 131.) McNeil said that she had been scared during that call.

{¶ 6} McNeil testified that when police officers arrived, she asked them "if they could make [Brock] leave peacefully." (*Id.*) McNeil left the room while the officers "ran [Brock's] name" and questioned him. (*Id.*) When McNeil returned, Brock had been taken outside, and McNeil gave her statement to a police officer.

**{¶ 7}** On cross-examination, McNeil said that she first heard from Brock on October 30 at about noon, and their exchanges continued until about 4:20 p.m. McNeil admitted that she asked Brock about her son's missing coat and later tried to call Brock three times; she said she called because she was "worried" about Brock's location. (*Id.*, p. 138.) She said Brock arrived at her house at about 8 p.m. Presented with a transcript of Facebook Messenger messages exchanged between Brock and McNeil on October 30 (*id.*, Exh. F), McNeil said she had no record of any additional conversations on that date. McNeil confirmed that Brock did not "shove" his way past her into her home, "[b]ut he did open my door and sit down." (*Id.*, pp. 143-144.) When reminded that she told the prosecutor that she had not closed her door completely, McNeil explained, "My door don't [sic] have a handle at all. All it has is a lock. So when you do push it, it's, like, not even closed." (*Id.*, p. 144.) "So if you don't lock the padlock, it doesn't close all the way." (*Id.*, p. 152.)

**{¶ 8}** Officer Tim Melvin of the Springfield Police Division testified that he and his partner, Officer Meredith Freeman, were on duty the night of October 30, 2017, and were dispatched in response to McNeil's 911 call. Upon arriving at the scene, the officers did a records check and discovered that Brock had an active warrant out of Champaign County. Officer Calvin Burch also responded and took a position at the rear of McNeil's residence. Officer Freeman knocked, and McNeil admitted both Freeman and Melvin into her house. McNeil asked the officers to have Brock leave. Due to Brock's warrant, however, the officers asked Brock to stand up from the couch, intending to arrest him. Brock refused.

**{¶ 9}** According to Officer Melvin, Officer Freeman managed to cuff Brock's left

hand while Officer Melvin grabbed Brock's right hand and continued to urge him to get up. "I heard Officer Freeman yelling, "My wrist, my wrist, my wrist. And when I looked down where her wrist was on [Brock's] hand, he had grabbed her wrist by the hand and started cranking it backward underneath." (*Id.*, p. 160.) Officer Melvin said that when Brock refused to release Freeman and continued to defy police orders, the two officers radioed for help, and Officer Burch came from the back of the house. After Brock kicked Officer Freeman in the chest and persisted in fighting, the officers successively deployed their Tasers on Brock, and eventually were able to apply handcuffs. The officers called medics to examine Brock, who then was transported to the hospital. Officer Melvin described Brock as "still [so] very upset, angry" that "he began rocking the [hospital] bed back and forth and the bed actually flipped and a piece of it broke off." (*Id.*, p. 164.)

{¶ 10} On cross-examination, the defense introduced photographs that Officer Melvin said depicted Brock's condition after his arrest, including injuries to his face and a splint on his leg where Officer Melvin had struck Brock with a baton. (*See* Trial Tr., Exhs. A-D.) Officer Melvin agreed that a photograph of Officer Freeman following the incident depicted no visible injuries; "you can't see a sprained wrist." (*Id.*, p. 170 and Exh. E.)

{¶ 11} Officer Burke testified as to his role in Brock's arrest. His description was largely consistent with Officer Melvin's account. Officer Burke said he interviewed McNeil after Brock was transported. Officer Burke then learned that Brock was subject to an active protection order. On cross-examination, Burke said that tasers were deployed on Brock a total of three times (first by Burke, then by Freeman, then again by Burke), but the prongs made contact only the latter two times. Officer Freeman offered a similar account of the events surrounding Brock's October 30 arrest. Freeman said that while at

the hospital where Brock was transported, she was treated for "a severe sprain" to her left wrist. (*Id.*, p. 196.)

{¶ 12} The State also presented the testimony of a Clark County Commons Pleas Court records custodian who verified that McNeil had a domestic violence civil protection order in effect against Brock on October 30, 2017. (Trial Tr., Exhs. 1-3.) The final order provided that Brock was not to have contact with McNeil or come within 500 feet of her residence, "even with the permission of the protected person." (*Id.*, p. 118 and Exh. 1.)

{¶ 13} At the close of the State's case, the trial court admitted the State's Exhibits 1-4 (certified copies of protection order documents and recording of 911 call) without objection. The defense moved to admit Exhibits A-F; the trial court sustained the State's relevancy objection to Exhibits A-D (photographs of Brock's injuries), but admitted Exhibits E (photograph of Officer Freeman's wrist) and F (transcript of Facebook Messenger messages). The defense presented no other evidence.

{¶ 14} The jury found Brock guilty of all four charges. On October 22, 2018, the trial court sentenced Brock to prison for two years on the Count One burglary offense, 24 months on the Count Two protective order violation, 12 months on the Count Three obstructing official business offense, and 18 months on the Count Five assault offense. The court further ordered that Brock's sentences for burglary and the protection order violation be served concurrently with each other, and that the sentences for obstructing official business and assault be served consecutively to each other and to the sentences on Counts One and Two.

{¶ 15} Brock appeals from the trial court's final judgment, asserting four assignments of error set forth as follows:

1) Insufficient evidence to sustain the verdicts based on lack of sufficient evidence concerning venue constitutes denial of due process;

2) Insufficient evidence of force, stealth, or deception to sustain a burglary conviction;

3) [Brock']s right to effective assistance of counsel and representation free from conflict of interest as guaranteed by the [S]ixth and [F]ourteenth [A]mendments to the U.S. Constitution and Section 10, Article I, of the Ohio Constitution, is violated when trial counsel previously represented a key prosecution witness in violation of Prof. Cond. Rule 1.7; and

4) Failure to raise a Crim. R. 29 motion for acquittal, when the state failed to meet its burden of proof regarding venue, violated [Brock]'s right to effective assistance of counsel.

### Assignments of Error #1, #2 – Sufficiency of Evidence

*a.     Standard of Review*

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

*b.      Assignment of Error #1 – Evidence Regarding Venue*

**{¶ 17}** Brock asserts in his first assignment of error that he was denied due process because the State did not present sufficient evidence to show that Brock committed the charged offenses in the venue in which he was tried. Although he concedes that his trial attorney did not raise a venue challenge in the trial court, Brock contends that his conviction in the absence of proper venue constituted plain error.

**{¶ 18}** Pursuant to Article I, Section 10 of the Ohio Constitution and R.C. 2901.12, "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. "It is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *Id.* at ¶ 19, quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Circumstantial evidence may be used to establish venue. *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 33 (2d Dist.), citing *State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 24 (8th Dist.).

**{¶ 19}** A challenge to venue may not be raised for the first time on appeal. *State v. Weber*, 2d Dist. Montgomery No. 25508, 2013-Ohio-3172, ¶ 33, citing *State v. Bridgeman*, 2d Dist. Champaign No. 2010-CA-16, 2011-Ohio-2680, ¶ 9. A criminal defendant who fails at trial to make a Crim.R. 29 motion for a judgment of acquittal waives his ability to appeal based on the insufficiency of the evidence. *State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, ¶ 23, citing *State v. Roe*, 41 Ohio St.3d 18, 535 N.E.2d 1351 (1989) and *State v. Knapp,* 2d Dist. Montgomery No. 18457, 2001 WL 62519

(Jan. 26, 2001). Even a defendant who made a Crim.R. 29 motion that "was too general to put the prosecutor and the court on notice of the venue issue * * * may not reveal that issue as the basis of his motion for the first time on appeal." *See State v. Schuyler*, 2d Dist. Clark No. 11CA0046, 2012-Ohio-2801, ¶ 17-18.

{¶ 20} Nevertheless, " 'failure to prove venue is a defect affecting a substantial right and is subject to review under the plain error doctrine.' " *Weber* at ¶ 33, quoting *Bridgman* at ¶ 9. "Plain error exists 'if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.' " *State v. Kessel*, 2019-Ohio-1381, ___ N.E.3d ___, ¶ 33 (2d Dist.), quoting *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 25 (2d Dist.).

{¶ 21} The record establishes that the State presented sufficient evidence of venue. McNeil testified as to the street address where the encounter with Brock occurred. (Trial Tr., p. 121.) Although her testimony did not identify the community in which that address is located, the evidence admitted regarding McNeil's protection order against Brock shows that McNeil's same residence address is in Springfield, Ohio. (*See* State's Exh. 1, p. 4; State's Exh. 3, p. 1.) In addition, Officers Melvin, Burch, and Freeman all testified that they responded to McNeil's address while on duty with the Springfield Police Division. (Trial Tr., pp. 156-157, 172-173, 185-186.) "[T]estimony that a certain locality's police department investigated the alleged crime may be sufficient to establish venue." *State v. Curry*, 2d Dist. Greene No. 2012-CA-50, 2014-Ohio-3836, ¶ 23, citing *State v. Norton*, 2d Dist. Greene No. 97-CA-112, 1998 WL 853022, *7-8 (Dec. 11, 1998); *see also State v. Shaw*, 134 Ohio App.3d 316, 319-320, 730 N.E.2d 1075 (2d Dist.1999); *State v. Schroyer*, 66 Ohio App. 30, 32-33, 31 N.E.2d 469 (2d Dist.1940) (testimony of Columbus

police officer and other witnesses referencing "well known places" in Columbus was sufficient to establish venue in Franklin County). Because the evidence was sufficient to establish venue, the trial court did not commit error, plain or otherwise, by entering a judgment of conviction against Brock.

**{¶ 22}** Brock's first assignment of error is overruled.

*c.        Assignment of Error #2 – Evidence Regarding Elements of Burglary Offense*

**{¶ 23}** Brock's second assignment of error maintains that the State presented insufficient evidence of force, stealth, or deception to sustain a burglary conviction. The statutory provision under which Brock was charged with burglary provides as follows:

(A) No person, by force, stealth, or deception, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

R.C. 2911.12.

**{¶ 24}** "Force" as used in R.C. 2911.12(A) "means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Accordingly, the requirement of "force" is satisfied by "any effort physically exerted." *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 16 (2d Dist.), quoting *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21.

**{¶ 25}** McNeil originally testified that Brock "opened the door" and entered her

home after she partially closed that door, leaving Brock outside. (Trial Tr., p. 126.) She later added, "I close[d] my door. * * * I did not tell him [Brock] to come in." (*Id.*, p. 143.) Pressed by defense counsel to admit that she "didn't close [her] door all the way" and that Brock did not "shove" or "push" his way in, McNeil stated: "I said I did not lock [the door]. I pushed the door closed, ran to the kitchen, grabbed my cell phone. * * * [H]e did open my door and sit down. * * * I told [the police officers] that I pushed my door closed. * * * He opened up the door. So if you call that pushing your way into a home, then I guess so." (*Id.*, pp. 143-144.)

{¶ 26} Although McNeil's testimony suggested that Brock needed to use only minimal force to enter her home, that evidence was sufficient to show that Brock "physically exerted" some degree of "effort" in order to open the door and go inside McNeil's residence. Such proof was all that was required. *See Hudson* at ¶ 16; *accord State v. Ball*, 2d Dist. Clark No. 2017-CA-54, 2018-Ohio-605, ¶ 15 (defendant's opening of closed but unlocked window was sufficient to establish he entered by force); *State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12 (witness's testimony that defendant opened a screen door to walk through an open inner door of victim's apartment was sufficient to prove "force"); *State v. McWilliams*, 2d Dist. Greene No. 2000-CA-89, 2001 WL 1203395, *3 (Oct. 12, 2001) ("In Ohio, opening a closed but unlocked door amounts to sufficient force to prove the element of force in the offense of Burglary"); *State v. Lane*, 50 Ohio App.2d 41, 46, 361 N.E.2d 535 (10th Dist.1976) (affirming burglary conviction of defendant who "forced open a closed but unlocked door").

{¶ 27} Brock's second assignment of error is overruled.

**Assignments of Error #3, #4 – Ineffective Assistance of Counsel**

{¶ 28} Both of Brock's remaining assignments of error maintain that he was denied the effective assistance of counsel, in violation of his constitutional rights. In his fourth assignment, Brock argues that his trial counsel performed deficiently by failing to move for acquittal under Crim.R. 29 based on the lack of proof as to venue. His third assignment of error contends that his trial counsel had an improper conflict of interest because the same attorney previously had represented McNeil in two criminal matters.

*a. Standard of Review*

{¶ 29} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct fell within the wide range of reasonable assistance. *Strickland* at 689.

*b. Assignment of Error #4 – Trial Counsel's Failure to Challenge Venue*

{¶ 30} We determined above with respect to Brock's first assignment of error that the record contains sufficient evidence to establish that Brock was tried in the proper venue. Accordingly, Brock's contention that his trial counsel rendered ineffective

assistance by failing to challenge venue through a Crim.R. 29 motion lacks substantive merit.

**{¶ 31}** Brock's fourth assignment of error is overruled.

*c.  Assignment of Error #3 – Trial Counsel's Alleged Conflict of Interest*

**{¶ 32}** "Where there is a right to counsel, the Sixth Amendment to the United States Constitution also guarantees that representation will be free from conflicts of interest." *State v. Dillon*, 74 Ohio St.3d 166, 167, 657 N.E.2d 273 (1995). To set forth a viable claim of ineffective assistance based on an attorney's alleged conflict of interest, "appellant must demonstrate that an actual conflict of interest adversely affected his counsel's performance." *State v. Johnson*, 2d Dist. Greene Nos. 09-CA-16, 10-CA-07, 2010-Ohio-2838, ¶ 44, quoting *State v. Keith*, 79 Ohio St.3d 514, 535, 684 N.E.2d 47 (1997); *see also State v. Buhrman*, 2d Dist. Greene No. 96-CA-145, 1997 WL 566154, *3-4 (Sept. 12, 1997) (recognizing that to establish ineffective assistance of counsel based on conflict of interest, defendant must show an actual rather than a potential conflict, and that the conflict adversely affected counsel's representation).

**{¶ 33}** "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Dillon* at 168, quoting *State v. Manross,* 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988). "A reviewing court cannot presume that the possibility for conflict resulted in ineffective assistance of counsel." *Manross* at 182.

**{¶ 34}** Brock has not demonstrated that his trial attorney was subject to an actual conflict of interest due to representing Brock after having represented prosecution witness

McNeil in two other criminal matters.[1] Brock does not claim, and nothing in the record suggests, that such representation was simultaneous or that the charges against McNeil related in any way to this case. Rather, Brock faults his trial attorney for accepting the representation despite the risk of a conflict, in violation of Prof.Cond.R. 1.7(a)(2), and for failing to obtain Brock's written, informed consent to the representation, in accordance with Prof.Cond.R. 1.7(b)(2).

{¶ 35} When an attorney's alleged violation of the rules of professional conduct is asserted as a basis for appeal, we lack jurisdiction to address that issue. *See State v. Robinson*, 2d Dist. Greene No. 2013-CA-33, 2014-Ohio-1663, ¶ 24, citing *State v. Snyder*, 6th Dist. Williams No. WM-08-004, 2009-Ohio-49, ¶ 35, 51 ("the issue of ineffective assistance based upon a violation of the Rules of Professional Conduct * * * is outside [an appellate court's] jurisdiction * * *."); *State ex rel. Buck v. Maloney,* 102 Ohio St.3d 250, 2004-Ohio-2590, 809 N.E.2d 20, ¶ 7-8 (Supreme Court of Ohio has exclusive and absolute jurisdiction over discipline of attorneys); *State v. Montgomery,* 2013-Ohio-4193, 997 N.E.2d 579, ¶ 36 (8th Dist.) (appellate courts "have no authority to address claimed violations of the Rules of Professional Conduct"); *Rice v. Lewis,* 4th Dist. Scioto No. 09CA3307, 2010-Ohio-1077, ¶ 51 (finding appellate court did not have jurisdiction over whether attorney violated rules of professional conduct due to conflict of interest); *State v. Frazier,* 8th Dist. Cuyahoga No. 62557, 1994 WL 50703, *9 (Feb. 17, 1994)

---

[1] The other matters Brock identifies are *State v. McNeil*, Clark C.P. No. 2014-CR-0024, and *State v. McNeil*, Clark C.P. No. 2014-CR-0170. While the record does not reflect the disposition of those cases, the Clark County Clerk of Courts' website indicates that the latter action was dismissed, *see McNeil*, Clark C.P. No. 2014-CR-0170 (May 21, 2014), and that McNeil was convicted of a second-degree felony count of felonious assault in *McNeil*, Clark C.P. No. 2014-CR-0024 (May 29, 2014).

("Appellant may not rely upon a rule meant as a guide for attorneys to follow to maintain the professionalism of the practice of law to support his assertion of error in the trial proceedings"). Accordingly, we will not address that particular argument.

{¶ 36} Irrespective of the rules of professional conduct, when defense counsel's previous representation of a trial witness is raised as the basis for an ineffective assistance of counsel claim, appellate courts apply a "successive representation" rather than a simultaneous representation analysis. *See State v. Jones*, 5th Dist. Stark Nos. 2007-CA-00041, 2007-CA-00077, 2008-Ohio-1068, ¶ 77. Successive representation "differs materially" from simultaneous representation because "the attorney is no longer beholden to the former client." *Id.* Consequently, in a case involving successive representation, the issue typically raised "is that an actual conflict will adversely affect trial counsel's performance because 'the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing confidential information.' " *Id.*, quoting *Moss v. United States*, 323 F.3d 445, 467 (6th Cir.2003).

{¶ 37} Although Brock here contends that his trial counsel's prior representation of McNeil "adversely affected [the attorney's] performance during * * * the trial, including her cross-examination of former client/key prosecution witness" McNeil, he does not identify any particular line of questioning that his attorney failed to pursue and provides no other specific examples of how his counsel's performance purportedly was deficient. [2]

---

[2] Brock does not assert that his defense attorney performed deficiently by failing to impeach McNeil's credibility through questioning her about her prior conviction. (*See* n.1, above). We note that McNeil's felonious assault conviction was "punishable by * * * imprisonment in excess of one year," and thus may have been admissible under Evid.R. 609(A)(1). Still, "[t]he decision whether or not to admit evidence under Evid. R. 609 is left to the sound discretion of the trial court * * *." *State v. Lawson*, 2d Dist. Montgomery No. 23456, 2010-Ohio-3114, ¶ 17. In addition, "[i]mpeachment of a witness by a prior felony

Conversely, the trial transcript demonstrates that defense counsel vigorously cross-examined McNeil, repeatedly challenging her testimony regarding the force Brock allegedly used to enter her residence, and also attempting to inject doubt as to the credibility of McNeil's denial that she invited Brock into her home. The record does not support a conclusion that the conduct of Brock's trial counsel fell below an objective standard of reasonableness or that any omissions by that attorney in cross-examining McNeil affected the outcome of Brock's trial.

{¶ 38} Brock's third assignment of error is overruled.

### Conclusion

{¶ 39} For the foregoing reasons, the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

John M. Lintz
J. David Turner
Hon. Richard J. O'Neill

---

conviction * * * is specifically made 'subject to Evid.R. 403.' " *State v. Rhines*, 2d Dist. Montgomery No. 24417, 2012-Ohio-3393, ¶ 66 (Hall, J., concurring). Therefore, even had Brock raised his attorney's failure to introduce McNeil's prior conviction as a basis for Brock's ineffective assistance claim, we could not say that his trial counsel performed deficiently in that regard where the trial court, in the exercise of its discretion, might have determined that the prejudicial effect of such evidence substantially outweighed its probative value, in accordance with Evid.R. 403(A).