[Cite as *Parma v. Gardner*, 2025-Ohio-5517.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF PARMA,                                    :

    Plaintiff-Appellee,                      :

                                No. 114945

    v.                                            :

PLURIA GARDNER,                                   :

    Defendant-Appellant.                     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

---

Criminal Appeal from the City of Parma Municipal Court
Case No. 24CRB02469

---

### *Appearances:*

Scott M. Tuma, Parma Law Director, and Dean DePiero,
Parma Assistant Prosecutor, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Aaron T. Baker, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant Pluria Gardner ("Ms. Gardner") appeals her convictions for failure to disclose personal information to law enforcement, resisting

arrest, and disorderly conduct following a bench trial in the Parma Municipal Court. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} This case stems from an argument that started in a Marc's grocery store between Ms. Gardner and several Marc's employees on September 1, 2024. During the altercation, the Parma Police Department was called to the store, and Ms. Gardner was eventually arrested and cited for failure to disclose personal information in violation of Parma Cod.Ord. ("P.C.O.") 606.32, a fourth-degree misdemeanor; resisting arrest in violation of P.C.O. 606.16, a second-degree misdemeanor; and disorderly conduct in violation of P.C.O. 648.04, a fourth-degree misdemeanor.

{¶ 3} On September 3, 2024, Ms. Gardner pled not guilty, was appointed an attorney, and was released on a personal bond. After missing two pretrials, a warrant was issued for Ms. Gardner's arrest. The warrant was recalled when Ms. Gardner appeared in court on November 6, 2024. That same day a bench trial was set for December 4, 2024.

{¶ 4} On the day of trial, Ms. Gardner appeared and requested a continuance through her attorney in order to file a jury demand and to obtain a medical opinion regarding her sleep disturbance condition. The trial court denied the continuance. The City of Parma ("City") then placed the plea offer on the record, which allowed Ms. Gardner to plead guilty to disorderly conduct in exchange for the

City dismissing the remaining charges. Ms. Gardner declined the offer, and a bench trial ensued. The following evidence was presented at trial.

{¶ 5} The first teenaged witness testified that she was a part-time employee at Marc's on West Ridgewood and was working in the self-checkout lane when Ms. Gardner appeared carrying multiple items in her arms. The witness testified that she approached Ms. Gardner to help her with her items and Ms. Gardner became loud and called the witness a "fat b****." (Tr. 16.) Then a second teenaged worker approached, and Ms. Gardner called that teen a "fat b****." Both teen employees retreated and called the supervisor Sharon. When Sharon approached, Ms. Gardner swore at her and said, "F*** you," and called the teens "lying a** b****es." (Tr. 19.)

{¶ 6} The second teen testified that Ms. Gardner continued to escalate the situation by yelling and insulting the teens, when Sharon arrived and asked Ms. Gardner to leave. The teen testified that Ms. Gardner and Sharon began to argue, so the teen called the manager Linda. When Linda arrived, she again asked Ms. Gardner to leave. Ms. Gardner then threw her bag of canned goods "towards the floor, but aimed at my manager, Linda." (Tr. 36.) The teen testified that Linda told the teens to go to the break room.

{¶ 7} Next, the supervisor Sharon testified that the teen employees waved her over to the self-checkout lane and explained what transpired between the teens and Ms. Gardner. Sharon testified that she approached Ms. Gardner and told her not to speak to the employees like that, and then Ms. Gardner started "cussing at me, calling me stupid, tells me that we should not hire children because their

adolescent brains are not developed and that we were stupid." (Tr. 54.) She requested that Ms. Gardner finish her transaction and leave. Ms. Gardner continued to yell and swear at Sharon, which drew the attention of other customers. Sharon repeatedly asked Ms. Gardner to leave; however, she refused to leave and requested the manager. So, Sharon called the manager, Linda.

{¶ 8} While Sharon attempted to brief Linda on the situation Ms. Gardner "charge[d] over to us." (Tr. 56.) Linda asked Ms. Gardner to leave, but she again refused, asking them to call the police. Ms. Gardner accused them of being prejudiced, continued to scream at them, and then threw her groceries down towards Linda's feet. Sharon admitted on cross-examination that she did "talk-back" to Ms. Gardner because she called Sharon "stupid" and a "b****." (Tr. 61.)

{¶ 9} Linda, the manager, testified next stating that she was briefed on the situation and that when she approached Ms. Gardner to ask if there was an issue, Ms. Gardner "started getting a little bit belligerent, just yelling, not making sense at all." (Tr. 67.) Linda warned Ms. Gardner that if she did not leave, police would be called. Ms. Gardner continued to yell and scream and then "threw her bag of products at her." (Tr. 67.) Linda called police who arrived shortly thereafter and took over.

{¶ 10} Officer Renato Romanello ("Officer Romanello") of the Parma Police Department testified that he and other officers responded to Marc's on West Ridgewood for "a disturbance with a female refusing to leave the store." (Tr. 73.) He testified that when he is called out to stores for someone refusing to leave, he

tries to get the person to leave without being cited; however, that did not happen on this call because Ms. Gardner refused to cooperate.

{¶ 11} Officer Romanello testified that he arrived on scene and attempted to obtain information from the Marc's employees about what happened, but Ms. Gardner kept interrupting, stating that she wanted her money back. He was informed that a bag of groceries was thrown at someone and that Ms. Gardner was being disorderly and was refusing to leave the store when requested. While investigating the allegations, Officer Romanello repeatedly requested Ms. Gardner's identifying information, but Ms. Gardner refused to comply even after being told that the failure to do so was an arrestable offense. He testified that Ms. Gardner tried to get past him, heading towards the employees, so he escorted Ms. Gardner out of the store because he was afraid things might escalate further. Ms. Gardner was arrested for failure to disclose personal information to law enforcement, disorderly conduct, and resisting arrest.

{¶ 12} Officer Romanello's body-camera video was played for the court. (City's exhibit No. 1.) The video begins with Officer Romanello arriving at Marc's. He enters the store and walks to the customer service desk where Ms. Gardner and several employees are standing. Officer Romanello attempts to gather information from the Marc's employees, while Ms. Gardner interjects with her side of the story. At this point, Ms. Gardner walks over to where she threw the groceries attempting to establish that nothing was damaged and she is entitled to a refund. Officer Romanello follows Ms. Gardner and asks for identification. Ms. Gardner starts to

get loud and refuses to give any personal information, even after being told it was an arrestable offense not to identify herself to law enforcement. After several requests, she accuses the officer and the store of being racist and starts walking back towards the customer service desk. Officer Romanello grabs Ms. Gardner and escorts her outside to the police vehicle. When he attempts to pat her down, cuff her, and put her in the vehicle, she starts screaming and yelling that she is being "molested" by the police in "racist, Parma, Ohio." (City's exhibit No. 1.) She struggles with the officer and refuses to let him shut the vehicle door all the while repeatedly screaming "help me Jesus." (City's exhibit No. 1.)

{¶ 13} After shutting the door to the police vehicle, Officer Romanello reenters the store to continue his investigation. At this point, another officer attempts to get Ms. Gardner's information and she refuses. She repeatedly requests her money back and complains about the teenagers talking behind her back. Ms. Gardner finally gives Officer Romanello her name and date of birth. Eventually, she is transported back to the police station and charged.

{¶ 14} Ms. Gardner testified on her own behalf stating that at the time of the incident she lived in East Cleveland and suffered from extreme sleep deprivation because of her living circumstances. She testified that she received notice from the Parma library indicating that she had books waiting so she took the bus to Parma to retrieve the books. Ms. Gardner testified that she stopped at Marc's before the library to buy food because the people she lives with steal her food. She bought cans of sardines and tuna, as well as trail mix. Ms. Gardner testified that the two teen

employees were whispering and mocking her. She denied yelling, swearing, or calling the teens obscenities. Ms. Gardner testified that the supervisor yelled at her and would not let her speak, so she requested a manager. When the manager came, Ms. Gardner requested a refund because she was not treated properly and wanted to shop at Walmart instead. Ms. Gardner testified that she did not yell at anyone and that she did not throw her bag of groceries at anyone. When questioned about her not providing her information to the police, she asserted that because of her sleep issues, her "reflexes can be very slow. I can go blank. I will micro sleep. I can be talking to you and I will just — just go out, just like that." (Tr. 101-102.) On cross-examination, Ms. Gardner testified that the teens did not offer her assistance and she did not argue with anyone or throw anything.

{¶ 15} After hearing closing arguments, Ms. Gardner was found guilty of all three charges by the trial court. The trial court continued the matter for sentencing so that Ms. Gardner could obtain her doctor's report.

{¶ 16} At sentencing, Ms. Gardner proceeded to argue with the trial court, telling the court that the trial was a "sham" and the court was a "kangaroo court." (Sent. tr. 10.) The trial court reviewed Ms. Gardner's medical documentation and then sentenced her to 90 days in jail; 80 days suspended; and credit for 2 days served, with 8 days deferred. She was placed on 12 months of probation and ordered to pay a $300 fine.

{¶ 17} Ms. Gardner now appeals, and raises the following assignments of error for review:

**Assignment of Error I:** The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A) as to all the charges, and thereafter entering a judgment of conviction of those offenses which were not supported by sufficient evidence, in derogation of [Gardner's] right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution, as well Section 16, Article I of the Ohio Constitution.

**Assignment of Error II:** The trial court abused its discretion when it refused to grant a continuance of trial so that [Garner] could prepare her defense and file a jury demand, solely because the City was prepared to proceed to trial.

## II. Law and Analysis

{¶ 18} In her first assignment of error, Ms. Gardner makes two arguments. First, she contends that the City failed to establish venue. Second, Ms. Gardner contends that there was insufficient evidence that Officer Romanello was a peace officer certified in the State of Ohio; therefore, she could not be convicted of resisting arrest or failure to disclose personal information.

{¶ 19} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Capp*, 2016-Ohio-295, ¶ 19-20 (8th Dist.), citing *State v. Hill*, 2013-Ohio-578, ¶ 13 (8th Dist.). Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for an offense. *Id.*, citing *State v. Taylor*, 2014-Ohio-3134, ¶ 21 (8th Dist.). Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence claim. *Taylor* at ¶ 21-23.

{¶ 20} When reviewing the sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). When performing a sufficiency inquiry, an appellate court does not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Jenks* at paragraph two of the syllabus. A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Id.* at 386.

{¶ 21} Gardner contends that the City failed to establish venue because the only evidence in the record regarding the location of the crime was "Marc's on West Ridgewood." We note that at the close of the City's case, Gardner did not raise the issue of venue. Rather, she moved for dismissal pursuant to Crim.R. 29 motion generally. Consequently, a defendant waives all but plain error when the failure to demonstrate venue is not called to the attention of the trial court. *State v. Brock*, 2019-Ohio-3195, ¶ 19 (2d Dist.); *State v. Gardner*, 42 Ohio App.3d 157, 158 (1st Dist. 1987). Plain error is an obvious error in the trial court proceedings that affects the outcome of the trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶ 22} Venue refers to the proper jurisdiction in which to file a case. Ohio's venue statute provides that "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and . . . in the territory of which the

offense or any element of the offense was committed." R.C. 2901.12(A). Likewise, P.C.O. 606.055(a)(1) provides that a person is subject to criminal prosecution in Parma Municipal Court if the person commits an offense that violates the Parma Codified Ordinances and any element of the offense occurs in the City of Parma.

{¶ 23} "'Under Article I, Section 10 [of the Ohio Constitution] and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense.'" *State v. Foreman*, 2021-Ohio-3409, ¶ 13, quoting *State v. Hampton*, 2012-Ohio-5688, ¶ 20. "[V]enue is a fact necessary to show compliance with a defendant's constitutional and statutory rights. However, venue is not a fact necessary to show whether an offense has been committed." *State v. Musarra*, 2025-Ohio-5058, ¶ 17. Although venue is not a material element of any criminal offense, it is a fact that must be proved at trial beyond a reasonable doubt, unless it has been waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477 (1983), citing *State v. Draggo*, 65 Ohio St.2d 88 (1981), and *State v. Dickerson*, 77 Ohio St. 34 (1907), paragraph one of the syllabus.

{¶ 24} Ideally, the prosecutor will establish venue directly. However, venue need not be proven in express terms, so long as it is established by all the facts and circumstances that the crime was committed in the location alleged. *State v. Gribble*, 24 Ohio St.2d 85, 90 (1970), citing *State v. Dickerson*, 77 Ohio St. 34 (1907). In fact, the Ohio Supreme Court recently reiterated that direct evidence is not required to prove venue. *State v. Smith,* 2024-Ohio-5030, ¶ 2. In other words, venue may be established by circumstantial evidence. *State v. Wright*, 2019-Ohio-

4460, ¶ 65 (8th Dist.). Furthermore, the trial court has broad discretion to determine the facts that would establish venue. *Toledo v. Taberner*, 61 Ohio App.3d 791, 793 (6th Dist. Jun. 9, 1989).

{¶ 25} Gardner asserts that her case is factually similar to the facts in *State v. Gardner*, 42 Ohio App.3d 157 (1st Dist. 1987), and *State v. Jackson*, 2015-Ohio-1694 (3d Dist.), wherein the appellate courts held that the prosecution failed to establish venue and consequently the convictions were reversed.

{¶ 26} In *Gardner*, the defendant was convicted, after a bench trial, of assaulting a restaurant owner. The only evidence in the record to establish venue was that "the restaurant was located at '1412 Vine' across from the Red Horse Bar at 'the corner next to Krogers,' and that the defendant lived at 28 East Thirteenth Street 'right around the corner from Krogers.'" *Id.* at 157. The First District stated that '[t]hese are the only clues to the location of the offense, but they are not sufficiently unique to permit the conclusion that the restaurant was in Hamilton County, Ohio." *Id.* at 158.

{¶ 27} In *Jackson*, the defendant was convicted, after a bench trial, of child endangering for leaving a one-year-old child he was supposed to be watching with another person. At trial, the mother and the landlord testified. The only evidence in the record regarding the location of the offense was testimony from the landlord stating the property was located at "346 Elm." The Third District stated that "[t]here was no evidence presented as to the village, city, township, or county where this address was located. There are numerous places throughout Ohio that have this

address, and most are obviously not located within the jurisdiction of the trial court." *Id*. at ¶ 8.

{¶ 28} We find the facts in *Gardner* and *Jackson* distinguishable from the facts in this case because police officers did not testify in either the *Gardner* or *Jackson* case. Whereas, in the instant case, Officer Romanello from the Parma Police Department testified at trial that he arrested Ms. Gardner at Marc's on West Ridgewood.

{¶ 29} Similarly, in *Toledo v. Loggins*, 2007-Ohio-5887 (6th Dist.), the defendant was convicted, after a bench trial, of assault. The appellate court held that venue was established "based on the fact that the street address was noted and the Toledo Police Department responded to that address." *Id*. at ¶ 8.

{¶ 30} Likewise in *State v. Brown*, 2005-Ohio-2939 (7th Dist.), the defendant was convicted of rape after a jury trial. The victim testified that the rape occurred in an area with trees near the defendant's home. The appellate court found that venue was established when there was testimony regarding defendant's address and the arresting officer, a Youngstown police officer, arrested the defendant at that address. *Id*. at ¶ 82. The court concluded that "the jurors could infer that the crime occurred in Mahoning County, Youngstown, Ohio." *Id*.

{¶ 31} Here, the evidence established that Parma Police Officers arrested Ms. Gardner at Marc's on West Ridgewood. The City's exhibit No. 1 clearly depicts the City of Parma's police vehicles outside Marc's. In addition, Ms. Gardner

repeatedly yells that she is in "racist Parma, Ohio."[1]  (City's exhibit No. 1.)  Finally, this was a bench trial, and a trial court has broad discretion to determine the facts that would establish venue.  *Taberner*, 61 Ohio App.3d at 793.  Therefore, when viewing the evidence in a light most favorable to the City, we find that there was sufficient evidence to establish that the offenses happened in Parma, Ohio.  Furthermore, we find no plain error.

{¶ 32} Nevertheless, we would be remiss if we did not caution that

> [t]he very first tenet of prosecutorial practice is to establish identification and venue.  The basic training of any prosecutor dictates that there are fundamental questions that are asked on direct examination on every criminal case.  The first is:  can you identify the defendant.  The second is:  in what city, county and state did this occur.  These are fundamental questions.  Leaving them to be shown by circumstantial evidence is risky at best[.]

*State v. Myers*, 2004-Ohio-4195, ¶ 8 (9th Dist.).

{¶ 33} We turn now to Ms. Gardner's second argument under the first assigned error where she contends that there was insufficient evidence that Officer Romanello was "a peace officer of any kind certified in the State of Ohio and therefore did not present evidence that he had any authority to commit a lawful arrest."  (Ms. Gardner brief, p. 6.)  Although she contends that the City must establish that Officer Romanello was a peace officer certified in the State of Ohio, she provides no authority for this contention and a review of the charges and elements does not support Ms. Gardner's argument.

---

[1] We note for the record that the body-camera video evidence reveals that Ms. Gardner was treated respectfully by the police department despite her accusations and lack of cooperation.

{¶ 34} In the instant case, Ms. Gardner was charged with failure to disclose personal information in violation of P.C.O. 606.32(a)(1), which states that "[n]o person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a *law enforcement officer* who reasonably suspects . . . [t]he person is committing, has committed, or is about to commit a criminal offense." (Emphasis added.)

{¶ 35} In addition, Ms. Gardner was charged with resisting arrest in violation of P.C.O. 606.16(a), which states in pertinent part that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of himself, herself or another." Parma's resisting arrest ordinance is verbatim the state statute, which is codified in R.C. 2921.33(A), and to show a lawful arrest under R.C. 2921.33(A), the prosecution must prove not only that there was a reasonable basis to believe an offense had been committed, but also that the offense was one for which the defendant could be lawfully arrested. *Cleveland v. King*, 2025-Ohio-3067, ¶ 1 (8th Dist.). As a general rule, a police officer may make a warrantless arrest for a misdemeanor if the offense was committed in the police officer's presence. *State v. O'Neill*, 2015-Ohio-815 (3d Dist.).

{¶ 36} Here, Ms. Gardner asserts that the City did not set forth sufficient evidence to prove that Officer Romanello was a peace officer; however, the Ohio Revised Code defines "peace officer" to include municipal police officers. R.C. 2935.01(B). Furthermore, the Parma Cod.Ord. and the Ohio Revised Code define "law enforcement officer" to include a municipal police officer. *See* P.C.O.

606.01(g)(1); R.C. 2901.01(A)(11). Because Officer Romanello is a police officer in the municipality of Parma, he is a law enforcement officer, as well as a peace officer.

{¶ 37} Ms. Gardner also argues that the prosecutor did not directly establish that Officer Romanello was a police officer because the prosecutor failed to ask in what capacity Officer Romanello was employed. The exchange went as follows:

> City: Officer Romanello, you are employed by the City of Parma Division of Police?
>
> Witness: Yes, sir.
>
> City: And you were employed with the Division of Police back on September 1, 2024?
>
> Witness: I was.
>
> City: And you were at least one police officer that was responding to the Marc's on West Ridgewood, correct?
>
> Witness: Yes, sir.

(Tr. 72-73.)

{¶ 38} Although the prosecutor did not specifically question in what capacity Officer Romanello was employed, the remaining testimony establishes that he was in fact employed as a police officer. Further, the surrounding evidence at trial sets forth sufficient evidence that Officer Romanello was in fact a police officer when he arrested Ms. Gardner because the body-camera video depicts uniformed police officers responding to Marc's and interacting with Ms. Gardner. During the interaction, Ms. Gardner acknowledges that Officer Romanello is a police officer when she repeatedly yells that she is being "molested by the police" during the pat-

down.[2] In addition, the judge referred to Officer Romanello as "officer" when he was being sworn in, and defense counsel referred to Officer Romanello as "officer" during cross-examination. Finally, this was "a bench trial where the trial judge is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision." *State v. Primous*, 2020-Ohio-912, ¶ 60 (8th Dist.), citing *State v. Bays*, 87 Ohio St.3d 15, 27 (1999).

{¶ 39} Again we reiterate that ideally the prosecutor will establish a witness's status as a police officer with direct testimony. Nevertheless, when viewing the evidence in a light most favorable to the City, the record before this court is sufficient to establish that Officer Romanello was employed as a police officer when he arrested Ms. Gardner.

{¶ 40} Accordingly, Ms. Gardner's first assignment of error is overruled.

{¶ 41} In her second assignment error, Ms. Gardner argues that the trial court abused its discretion by denying her motion to continue. She contends that the trial court did not properly weigh the factors set forth in *C.M.R. v. B.T.B.S.*, 2023-Ohio-1973 (8th Dist.), which states that

> "[w]hen evaluating a request for a continuance, a court should consider all relevant factors, including the following: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a

---

[2] We note for the record that the video evidence clearly establishes that Officer Romanello barely touched Ms. Gardner during the pat-down.

continuance; and other relevant factors, depending on the unique facts of each case."

*Id*. at ¶ 14, quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). We disagree with Ms. Gardner's assertion.

{¶ 42} A trial court's decision to grant or deny continuance of a trial is reviewed by this court under an abuse-of-discretion standard. *State v. Adkisson*, 2024-Ohio-964, ¶ 11 (8th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65 (1981). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 43} On the day of trial, Ms. Gardner requested a continuance to file a jury demand and to obtain a medical evaluation regarding her sleep issues, which she claims contributed to her state of mind on the date of the offenses. Regarding the jury demand, Crim.R. 23(A) provides in pertinent part that

> [i]n petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless [she] demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.

{¶ 44} A "petty offense" is defined in Crim.R. 2(D) as "a misdemeanor other than a serious offense." A "serious offense" is defined in Crim.R. 2(C) as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Ms. Gardner was charged with one second-degree misdemeanor that is punishable by up to 90 days in jail, one fourth-degree

misdemeanor that is punishable by up to 30 days in jail, as well as a minor misdemeanor that is not punishable by jail time. Because Ms. Gardner was charged with petty offenses, she was required to file her jury demand at least ten days before the trial date, which was not completed. Further, the trial court allowed defense counsel to explain the reasons for the requested continuance, and then the court gave a detailed history of the case setting forth the reasons for the denial. The trial court stated that

> [t]he citation was issued on September 1, 2024. It was allotted to this Court on September 4, 2024. It was set for September 18th pretrial, at which time it was reset to October 2nd.
>
> There was a warrant issued for a failure to appear for a second time and a bond was set at 7,500, 10 percent on October 31st. [Ms. Gardner] had contacted our court and indicated that she wanted a new date. At which time, we would recall the warrant on November 6th. We did recall the warrant. We gave her personal reconnaissance bond, and it was set for bench trial on December 4, 2024.
>
> I do see that [the prosecutor] has all of his witnesses in the courtroom today, so I am going to deny the motion to continue.
>
> With respect to the second motion for jury trial, it was, regardless of whether [Ms. Gardner and her attorney] had a conversation [about] it or not, it's just not timely made, so I'm going to deny your motion for jury trial as well.

(Tr. 5-6.) When the trial court denied Ms. Gardner's motion, she accused defense counsel of ineffective assistance for failing to file a jury demand and claimed that defense counsel was not helping her.

{¶ 45} A review of the record reveals that the trial court did not abuse its discretion by denying Ms. Gardner's motion to continue because she contributed to the circumstances that gave rise to the request. The record demonstrates that Ms.

Gardner failed to appear for two pretrials, which resulted in a warrant being issued. Thereafter, Ms. Gardner was granted a continuance when she called the court requesting a new date to turn herself in. On November 6, when Ms. Gardner appeared, the warrant was recalled, and her trial date was set. Although Ms. Gardner was advised by her attorney regarding the requirements to demand a jury, she failed to request a jury trial until the day of trial. In addition, the City's witnesses were present and prepared to go forward. Ms. Gardner actions suggest that her request was "dilatory, purposeful, or contrived" in order to once again cause a delay. Contrary to Ms. Gardner's assertions, the record supports the conclusion that the trial court considered the *Unger* factors, and the denial of her motion to continue was not an abuse of discretion.

{¶ 46} Accordingly, Ms. Gardner's second assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR